IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | |
|---|---|
| IN RE: <br><br> BRAD H. FRIEDLANDER <br><br> Debtor <br><br> KAPITUS SERVICING, INC. F/K/A COLONIAL FUNDING NETWORK, INC. AS SERVICER FOR ADVANCE AMERICAN BUSINESS SOLUTIONS, LLC <br> Plaintiff <br><br> v. <br><br><br> BRAD H. FRIEDLANDER <br><br> Defendant | Bankruptcy No. 19-12300-aih <br><br> Chapter 7 <br><br><br> Adversary Case No. |

**KAPITUS SERVICING, INC. F/K/A COLONIAL FUNDING NETWORK, INC. AS SERVICER FOR ADVANCE AMERICAN BUSINESS SOLUTIONS, LLC'S COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT**

Kapitus Servicing, Inc. f/k/a Colonial Funding Network, Inc. as servicer for Advance American Business Solutions, LLC (the "Plaintiff"), by its undersigned attorneys, Bernstein-Burkley, P.C., files this Complaint under Sections 523 of Title 11 of the United States Code (the "Bankruptcy Code") objecting to the dischargeability of a pre-petition debt owed by Defendant Brad H. Friedlander (the "Defendant"), and in support thereof alleges as follows:

**JURISDICTION AND VENUE**

1. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and is brought pursuant to 11 U.S.C. § 523(a) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

2. Subject matter jurisdiction is conferred upon this court by 28 U.S.C. §§ 157, 1334 and 523.

3. Venue of the instant action properly lies in this Court pursuant to 28 U.S.C. § 1409(a) because this Complaint arises in Defendant's Chapter 7 bankruptcy case.

4. If the Court should find that this is not a core proceeding, Plaintiff consents to entry of final judgment by the Court. [1]

5. This Adversary Proceeding relates to *In Re Brad Friedlander,* Case No. 19-12300-aih (Bankr. ND Ohio)(Chapter 7), now pending in this Court (the "Bankruptcy Case").

## THE PARTIES

6. Plaintiff is, and was, at all relevant times, a Virginia Corporation with its principal place of business at 2500 Wilson Boulevard, Suite 340, Arlington, Virginia.

7. Upon information and belief, Defendant is an individual residing at 3600 Park East Drive Apt. 513, Beachwood, OH 44122.

8. Upon information and belief, the Defendant is or was, at all relevant times, an owner/officer/director/member/manager and guarantor of BJRP LLC, d/b/a Moxie the Restaurant, d/b/a Red the Steakhouse ("BJRP").

9. Plaintiff is an unsecured creditor with a claim against Defendant, in the amount of at least $449,912.00 (plus additional costs, fees, expenses and interest), pursuant to a certain personal guaranty of an obligation of BJRP executed by Defendant and as more fully detailed below.

## GENERAL ALLEGATIONS

10. Defendant filed for bankruptcy under Chapter 7 of the Bankruptcy Code on April 17, 2019 (the "Petition Date") in the United States Bankruptcy Court for the Northern District of Ohio (the "Court"), Bankruptcy Case No. 19-12300-aih (the "Bankruptcy Case" or "Case").

11. July 19, 2019 was established as the deadline to object to discharge.

12. Accordingly, this Complaint is timely filed.

---

[1] Notwithstanding any of the allegations and claims herein, the institution of this Adversary Proceeding, the filing of this complaint and any other appearance in this Adversary Proceeding and in the above-referenced bankruptcy case, including the submission of motions, opposition papers, and entry of orders, is without waiver, and express reservation, of any and all of Plaintiff's rights, defenses and remedies available at law and in equity, including, without limitation, under the Agreement (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* If and when Plaintiff files a proof of claim in the Bankruptcy Case (the "Proof of Claim"), Plaintiff expressly incorporates any reservation of rights that it shall incorporate in the Proof of Claim.

13. On or about May 3, 2018, Defendant executed a Merchant Funding Application with Plaintiff ("Application") on behalf of BJRP. A true and correct copy of the Application is attached hereto as Exhibit "A" and is incorporated by reference herein in full.

14. Prior to entering into any agreement, Defendant represented to Plaintiff through a funding call on May 8, 2018 ("Funding Call") that BJRP was a profitably run, expanding business that specifically operated as a restaurant and that it did not intend to seek other funding or financing. Defendant also represented during that funding call to Plaintiff that BJRP was not insolvent, did not anticipate selling the business and that Defendant and BJRP did not anticipate that BJRP would file for bankruptcy at any time in the near future. Defendant indicated during the Funding Call that he was renovating one of the restaurants, but that was the only restaurant that would be closed (temporarily). Defendant also indicated that BJRP was current with all lenders/creditors.

15. Additionally, within the Funding Call Defendant represented to Plaintiff that there would only be one other creditor, OnDeck, with a lien on BJRP's assets in front of Plaintiff's. As a result of such information, Plaintiff required that part of the funds requested by Defendant be paid directly to OnDeck such that OnDeck's lien would be eliminated and Plaintiff would have a first priority security interest over all of BJRP's assets. Defendant estimated to Plaintiff that there was approximately $200,000 owed to OnDeck.

16. During the Funding Call, Defendant acknowledged that any false or misleading statements could be construed as fraud.

17. All statements or actions attributed to Defendant in this Complaint are to be understood to have been statements or actions made or performed by Defendant in his official capacity on behalf of BJRP and personally as the guarantor.

18. Relying on these representations, Plaintiff entered into the below agreement with Defendant.

19. Reliance on these representations was reasonable and justifiable because, at the time, Plaintiff had no knowledge, nor any reason to know, that the statements of information provided by Defendant were false.

20. In reliance on the representations made by BJRP and the Defendant in the Agreement, the Application and during the Pre-Funding Call, Plaintiff agreed to purchase certain of BJRP's future receivables.

21. Prior to the Petition Date, Defendant, as both a principal and guarantor, executed a Revenue Based Factoring (RBF/ACH) Agreement (hereinafter "Agreement") with Plaintiff. A true and correct copy of the Agreement is attached as Exhibit "B" and is incorporated by reference herein in full.

22. In the Agreement, the Defendant sold and Plaintiff purchased BJRP's receivables in the amount of Five Hundred Seventy Eight Thousand, One Hundred Dollars ($578,100.00) (the "Purchased Receivables") in exchange for an up-front advance in the amount of Four Hundred Ten Thousand Dollars ($410,000.00) (the "Purchase Price" or "Funds").

23. Pursuant to the Agreement, BJRP agreed to deposit all of its receipts in one (1) bank account acceptable to Plaintiff (the "Agreed Account") and irrevocably authorized Plaintiff to debit the Purchased Receivables from the Agreed Account via ACH (Automatic Clearing House) payments in the weekly amount of Seven Thousand, Four Hundred Eighteen Dollars ($7,418.00).

24. By way of the Agreement, Defendant represented, warranted, and covenanted the following in writing:

> **II. REPRESENTATIONS, WARRANTIES AND COVENANTS** Merchant represents, warrants and covenants that as of this date and during the term of this Agreement:
>
> **2.1 Financial Condition and Financial Information**. Its bank and financial statements, copies of which have been furnished to FUNDER, and future statements which will be furnished hereafter at the discretion of FUNDER, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise FUNDER of any material change in its financial condition, operation or ownership. Funder may request statements at any time during the performance

of this Agreement and the Merchant shall provide them to FUNDER within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

**2.7 Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis.

**2.9 No Bankruptcy or Insolvency.** As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. …

**2.10 Additional Financing.** Merchant shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than FUNDER without their written permission.

**2.11 Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of FUNDER.

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**4.6 Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

25. Likewise, by way of the Agreement, Debtor agreed to certain terms in writing:

**1.1 Merchant Deposit Agreement**. Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to FUNDER, with a Bank acceptable to FUNDER, to obtain electronic fund transfer services. Merchant shall provide FUNDER and/or its authorized agent with all of the information, authorizations necessary for verifying Merchant's receivables, receipts and deposits into the Account. Merchant shall authorize FUNDER and/or its agent to deduct the amounts owed to FUNDER for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant by permitting FUNDER to withdraw the specific daily amount credited against the specified percentages by ACH

debit of the Merchant account. The authorization shall be irrevocable without the written consent of FUNDER.

**1.9 Sale of Receipts.** Merchant and FUNDER agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from FUNDER to Merchant. Merchant agrees that the Purchase Price is in exchange for the sale of future Receipts pursuant to this Agreement equals the fair market value of such Receipts. FUNDER has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to FUNDER in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 1.1. In no event shall the aggregate of all amounts be deemed as interest hereunder and charged or collected hereunder exceed the highest rate permissible at law. In the event that a court determines that FUNDER has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and FUNDER shall promptly refund to Merchant any interest received by FUNDER in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that FUNDER not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law.

26. On or about May 8, 2018, Plaintiff fulfilled its obligations under the Agreement by advancing the Purchase Price to Merchant, less any fees owed.

27. On or about May 9, 2018, Plaintiff filed a UCC-1 financing statement (the "Financing Statement") with the Ohio Secretary of State, thereby perfecting its purchase of the Purchased Receivables.

28. As of the Petition Date, Defendant owes Plaintiff no less than Four Hundred Forty Nine Thousand Nine Hundred Twelve Dollars ($449,912.00), not including costs and reasonable attorney's fees for legal proceedings, which Plaintiff is entitled to recover pursuant to paragraph 1.11 of the Agreement.

29. Defendant executed the Agreement in his official capacity on behalf of BJRP, and personally, as a guarantor, agreeing to be obligated to all terms of the Agreement. Agreement (Ex. B) at p. 1.

30. The Defendant also executed a personal guaranty (the "Guaranty") guaranteeing that he would not take any action, nor permit BJRP to take any action that would breach the Agreement. The Guaranty is annexed to the Agreement.

31. Of the $578,100.00 of Purchased Receivables, Plaintiff has received only $130,688.00 (merely 22.6% of the total Purchased Receivables), leaving a balance of $447,241.00 outstanding under the Agreement (excluding additional fees and costs that have been incurred and will continue to be incurred).

32. On September 28, 2018, BJRP filed for Chapter 11 in the Northern District of Ohio at Case No. 18-15839 ("BJRP Bankruptcy").

33. On December 26, 2018, the Court entered an Order in the BJRP Bankruptcy approving the sale of BJRP restaurants free and clear of all liens. See Doc No. 55. The sale realized no monies for Plaintiff.

34. Upon information and belief, Defendant never had any intention to honor the Agreement or Guaranty. Instead, upon information and belief, Defendant intended to mislead Plaintiff to obtain the Funds, all the while knowing that neither BJRP nor Defendant intended to nor was capable of remitting the Purchased Receivables and/or otherwise pay Plaintiff. Payment on the Purchased Receivables stopped October 2018, just five (5) months after funding.

35. Upon information and belief, at all relevant times, BJRP and Defendant did not intend to use the Funds for the purposes of operating a restaurant.

36. Upon information and belief, at all relevant times BJRP and Defendant did not intend to use the funds from Plaintiff for BJRP's business purposes. Rather, Defendant and BJRP intended to use the Funds to advance money to Defendant's other business entities.

37. Upon information and belief, at the time the Agreement was being negotiated and executed, BJRP was either insolvent or very near to insolvency, due in part or in whole to BJRP's and Defendant's pattern of advancing funds from BJRP to their other business entities.

38. Upon information and belief, at all relevant times both BJRP and Defendant were aware that BJRP was insolvent or very near insolvency.

39. Upon information and belief, at all relevant time, BJRP and Defendant were aware that, due to its insolvency or nearness to insolvency, BJRP would likely need to file for bankruptcy protection in the very near future, which it did less than five (5) months after entering into the Agreement.

40. Upon information and belief, there were creditors other than OnDeck who, prior to and at the time of the Agreement, had blanket liens over all of BJRP's assets and whose security interests would have priority over Plaintiff's security interests.

41. Upon information and belief, at the time the Agreement was being negotiated and executed, Defendant and BJRP were also actively seeking additional funding from other sources without Plaintiff's knowledge or consent.

42. According to BJRP's Schedule D filed as a part of its Bankruptcy schedules ("Schedule D"), on June 1, 2018, less than a month after entering into the Agreement with Plaintiff, BJRP obtained funding from Tower IV LLC (hereinafter "Tower") which, as of the date the Bankruptcy was filed, had an outstanding balance of Nine Hundred Sixty Thousand Dollars ($960,000.00). A true and correct copy of Schedule D is attached hereto as Exhibit "C."

43. Upon information and belief, Defendant and BJRP did not intend to grant Plaintiff a first priority security interest on all of BJRP's assets.

44. Upon information and belief, Defendant's and BJRP's misrepresentations were made knowingly with the intent to deceive Plaintiff and to thereby induce Plaintiff to enter into the Agreement and advance money to them.

45. The combined sum of outstanding Receivables due and owing to Plaintiff along with all costs, fees, expenses and interest is at least $447,241.00. In addition, Plaintiff is entitled to recover

attorneys' fees and expenses in connection with this dispute pursuant to Section 3.3 of the Agreement.

## COUNT I
### (Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A))

46. Plaintiff incorporates by reference the above allegations set forth in Paragraphs one (1) through forty-five (45) and incorporates the same herein as though more fully stated at length.

47. Defendant's liability to Plaintiff, as alleged herein, is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

48. Defendant obtained money and services by false pretenses, false representations, and/or actual fraud within the meaning of 11 U.S.C. 523(a)(2)(A).

49. Pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, a debt in which a Defendant obtains money by false pretenses, false statements, or actual fraud shall not be dischargeable.

50. Plaintiff believes and alleges that Defendant entered into the Agreement with the specific intent to obtain funds from Plaintiff which he knew neither he nor BJRP would repay. In addition, upon information and belief, Defendant made false statements to Plaintiff with the intent to induce Plaintiff to extend credit.

51. Upon information and belief, at the time the Agreement was being negotiated the Defendant did not intend to use the Funds for any business purpose as stated in paragraph 2.12 of the Agreement. Rather, upon information and belief, the Defendant intended to use the funds to advance money to his other business entities.

52. Upon information and belief, Defendant falsely represented to Plaintiff that there was only one outstanding lien on BJRP's assets, held by OnDeck, that would have priority over Plaintiff's lien pursuant to the Agreement and that OnDeck's lien would be paid in full pursuant to the Agreement such that Plaintiff would have the first lien on all of BJRP's assets.

53. Upon information and belief, another creditor, American Express Bank, also had a lien over all of BJRP's assets and said lien also had priority over Plaintiff's lien at the time that the Agreement was negotiated and executed. *See*, Exhibit "C".

54. Defendant also engaged in the following:

   a. Defendant executed the Application in which he falsely and fraudulently represented that BJRP and Defendant would use the Funds for "working capital" when in fact the Defendant and BJRP intended to use the Funds in other business entities.

   b. On or about February 01, 2018, Defendant and BJRP incurred an obligation to American Express Bank in which American Express Bank obtained a second blanket lien over all of BJRP's assets and which was second only to the first lien held by Tower IV Investments that Defendant and BJRP incurred on or about June 1, 2018.

   c. On or about May 07, 2018, Defendant executed the Guaranty which falsely and fraudulently represented to Plaintiff that Plaintiff had obtained a first priority security interest in all of BJRP's assets.

   d. On or about May 07, 2018, Defendant executed the Agreement in which he falsely and fraudulently represented that BJRP was not insolvent or nearly insolvent.

   e. On or about May 07, 2018, BJRP received money from Plaintiff based on Defendant's false and fraudulent statements and acts.

55. Upon information and belief, as fully detailed above, at the time the representations were made, Defendant knew that his representations were false, untrue, misleading, and, as a direct and proximate cause of these intentional misrepresentations and omissions, Defendant knew that Plaintiff would be induced to tender Funds to BJRP.

56. Upon information and belief, Defendant intended to induce Plaintiff to act or refrain from acting upon his false representations, and Plaintiff justifiably relied upon such false representations.

57. Plaintiff suffered damages as a direct and proximate consequence of the false representations made by Defendant.

58. As a result of false representations by Defendant, Defendant obtained from Plaintiff, *inter alia*, the Funds which would not have been authorized by Plaintiff if the misrepresentations had not been made.

59. Defendant's statements and acts described above constitute conduct to obtain money by false pretenses, false statements, or actual fraud.

60. Defendant's obligation to Plaintiff is a debt for money, property, services, or an extension, renewal, or refinancing of credit, obtained by false pretenses, a false representation, or actual fraud, and is nondischargeable. Plaintiff is further entitled to an award of damages in the amount of $447,241.00, plus attorneys' fees, costs incurred, and such other relief as the Court deems is just and appropriate.

## COUNT II
### (Nondischargeability of Debt Pursuant to 11 U.S.C. §523(a)(2)(B))

61. Plaintiff incorporates by reference the above allegations set forth in Paragraph one (1) through sixty (60) and incorporates the same herein as though more fully stated at length.

62. Defendant's liability to Plaintiff, as alleged herein, is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

63. Pursuant to 11 U.S.C. §523(a)(2)(B), a debt in which a Defendant obtains money by a statement in writing that is materially false respecting an insider's financial condition, on which the creditor reasonably relied, and which the Defendant caused to be published with intent to deceive, is nondischargeable.

64. Defendant, an insider of BJRP, did obtain money from Plaintiff by the following written, materially false statements respecting BJRP's financial condition on which Plaintiff reasonably relied, among others:

 a. On May 07, 2018, Defendant executed the Agreement in which he falsely and fraudulently represented BJRP's financial condition was accurately reflected in the documents produced to Plaintiff.

 b. On May 07, 2018, upon information and belief, Defendant executed the Agreement in which he falsely and fraudulently represented that he and BJRP intended to use the Funds for working capital, when in fact, Defendant intended to use the Funds to advance money to his other business entities.

 c. On May 07, 2018, Defendant executed the Agreement in which he falsely and fraudulently represented that BJRP was not insolvent or nearly insolvent and additionally represented such information in a recorded phone call that occurred prior to finalizing the Agreement when Defendant responded to Plaintiff's question regarding if Defendant knew of any reason BJRP might need to file for bankruptcy at any time in the near future by stating "No."

65. Upon information and belief, as fully detailed above, at the same time the representations were made, Defendant knew these representations were materially false, untrue and misleading.

66. Defendant caused these false statements to be made in writing, including, but not limited to publishing such statements in the Agreement and Application.

67. Defendant is an insider of BJRP, because, at all relevant times, Defendant served as owner, officer, director, managing member and/or person in control of BJRP, within the meaning of "insider" under 11 U.S.C. § 101(31)(A)(iv).

68. Plaintiff reasonably relied on these written statements made by Defendant in deciding to transfer the Funds to BJRP.

69. Plaintiff suffered damages as a direct and proximate consequence of the materially false statements made by Defendant.

70. As a result of these materially false written statements by Defendant, Defendant obtained from Plaintiff, *inter alia*, the Funds which would not have been authorized by Plaintiff if the materially false statements had not been made.

71. Defendant's activities described above constitute obtaining money by materially false written statement regarding an insider's financial condition, on which Plaintiff relied, and which Defendant made with the intent to deceive.

72. Consequently, Defendant's debt to Plaintiff is one for money obtained by materially false written statement regarding an insider's financial condition, on which Plaintiff relied, and which Defendant made with intent to deceive, and is nondischargeable.

73. Accordingly, Defendant's debt to Plaintiff is nondischargeable, and Plaintiff is entitled to an award of damages in the amount of $447,241.00, plus attorneys' fees, costs incurred, and such other relief as the Court deems just and proper.

## COUNT III
### (Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4))

74. Plaintiff hereby incorporates paragraphs one (1) through seventy-three (73) and incorporates the same as though set forth herein

75. Plaintiff believes and alleges that Defendant entered into the Agreement with the specific intent not to use the funding proceeds for business purposes and not to repay the receivables. Additionally, upon information and belief, Plaintiff alleges that Defendant made false statements to Plaintiff with the intent to induce Plaintiff to extend credit and execute the Agreement.

76. Defendant's liability to Plaintiff as alleged herein, is a debt, "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" within the meaning of 11 U.S.C. §523(a)(4).

77. Defendant within five (5) months, defaulted on its payment obligations under the Agreement. Plaintiff only debited a total of $130,688.00 ACH payments. Defendant thereafter stopped payments to Plaintiff due to BJRP's bankruptcy proceedings.

78. Defendant obtained the funds from the Agreement by committing fraud and defalcation while acting in a fiduciary capacity as the owner/officer/director/member/manager and guarantor of BJRP.

79. Upon information and belief, Defendant misappropriated significant portions of the funds for his own benefit for other restaurant entities in which the Defendant was affiliated with constituting fraud and deceit.

80. Upon information and believe, Defendant transferred the funds and/or Purchase Receivables into accounts not accessible by the Plaintiff, which constitutes larceny.

81. Alternatively, Defendants' misappropriation of the funds and/or receivables was embezzlement because Plaintiff entrusted Defendants with the funds and/or receivables and because Defendant may have obtained control over such funds and/or receivables without authorization.

82. The Defendant's debt to Plaintiff, is a debt for larceny and/or embezzlement because the Defendant moved the receivables to be deposited into the Account that Plaintiff acquired under the Agreement with the intent to permanently deprive the Plaintiff of those receivables.

83. Upon information and belief, Plaintiff alleges that Defendant never had any intention to honor the Agreement and Guaranty.

84. Defendant's obligation to Plaintiff is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, and is nondischargeable. Plaintiff is further entitled to an award of damages in the amount of $447,241.00 plus attorneys' fees, costs incurred, and such other relief as the Court deems just and proper

**FOURTH CLAIM FOR RELIEF**
**(Nondischargeability of Debt Pursuant to 11 U.S.C. §523(a)(6)**

85. Plaintiff repeats and realleges the above allegations set forth in Paragraphs one (1) through eighty-four (84) and incorporates the same herein as though more fully stated at length.

86. Pursuant to Section 532(a)(6) of the Bankruptcy Code, a debt incurred by a debtor who engages in willful malicious conduct which results in damage shall be nondischargeable.

87. Plaintiff believes and alleges that Defendant entered into the Agreement with the specific intent to induce Plaintiff to extend the Funds.

88. Debtor also engaged in the following willful and malicious acts, among others:

89. On May 7, 2018, Defendant executed the Agreement in which he falsely and fraudulently represented BJRP's financial condition was accurately reflected in the documents and information produced to Plaintiff

90. On May 7, 2018, Defendant executed the Agreement in which he falsely and fraudulently represented that he would provide Plaintiff irrevocable access to the account for the receipts by permitting Plaintiff to withdraw the specific amount credited against the specified percentages by ACH debit of the Account.

91. During the Funding Call and in the Agreement which Defendant executed, he falsely and fraudulently represented that BJRP had no intention of filing for bankruptcy and that BJRP was not insolvent.

92. Defendant falsely and fraudulently represented to a representative of Plaintiff that BJRP was not in arrears on any loans or with any financial institutions.

93. On or about May 07, 2018, Defendant executed the Guaranty which falsely and fraudulently represented to Plaintiff that Plaintiff had obtained a first priority security interest in all of BJRP's assets.

94. During the Funding Call and the execution of the Agreement, Defendant falsely and fraudulently represented to a representative of Plaintiff that he was not planning on closing BJRP within the next twelve months despite ceasing deposits and/or prohibiting access to the Account

other than for one location to conduct a rehabilitation of the restaurant. Defendant specifically stated that this was not a permanent close.

95. Upon information and belief, Defendant made material omissions of fact that induced Plaintiff into transferring the Funds to BJRP, such as failing to disclose that Defendant and/or BJRP did not intend to pay the Purchase Price due to Plaintiff, as well as not disclosing that BJRP was insolvent and on the verge of filing bankruptcy.

96. BJRP received money from Plaintiff based on Defendant's false and fraudulent statements and acts.

97. Defendant's activities described herein constitute willful and malicious conduct which resulted in damage to Plaintiff.

98. Consequently, the Defendant's debt to Plaintiff was incurred by Defendant on behalf of BJPR and as a personal guarantor, who engaged in willful and malicious conduct which resulted in damage to Plaintiff and is nondischargeable.

99. Upon information and belief, all of the acts and omissions that constitute a breach or default of the Agreement were performed or omitted by, at the direction of or with the consent of Defendant and thus Defendant is in breach of the Agreement giving Plaintiff a right to recover damages.

100. Thus, Plaintiff is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(6), Defendant's debt to Plaintiff is non-dischargeable and a request for damages for breach of contract and a judgment for money pursuant to the request herein.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

A. On Count I, for judgment against Defendant determining that the amount owed by the Defendant to Plaintiff is not dischargeable in the Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against Defendant, and for money judgment according to proof;

B. On Count II, for Relief for judgment against Defendant determining that the amount owed by Defendant to Plaintiff is not dischargeable in the Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against Defendant, and for money judgment according to proof;

C. On Count III, for Relief for judgment against Defendant determining that the amount owed by Defendant to Plaintiff is not dischargeable in the Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against Defendant, and for money judgment according to proof;

D. On Count IV for Relief for judgment against Defendant determining that the amount owed by Defendant to Plaintiff is not dischargeable in the Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against Defendant, and for money judgment;

E. Granted attorneys' fees and costs herein incurred; and

F. Granting such other and further relief as this Court may deem just and proper.

Dated: July 18, 2019                                    BERNSTEIN-BURKLEY, PC

By: */s/ Keri P. Ebeck*
Keri P. Ebeck, PA ID #91298
(Admitted in NDOH)
707 Grant Street, Suite 2200
Pittsburgh, PA 15219
T:  412-456-8100
F:  412-456-8135
kebeck@bernsteinlaw.com

*Counsel for Kapitus Servicing, Inc. f/k/a Colonial Funding Network, Inc. as servicer for Advance American Business Solutions, LLC*